# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**EVA LUCERO**, Personal Representative
of the Estate of Benjamin Sanchez, and
**ROSEMARIE SANCHEZ**, individually,

    Plaintiffs,

    vs.                                                                                      No. **CIV 00-357 MCA/LFG (ACE)**

**UNITED STATES OF AMERICA**,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment Regarding Plaintiffs' Allegations of Suicide [Doc. No. 63] filed on June 11, 2001, and Defendant's Motion for Summary Judgment Based Upon Discretionary Function [Doc. No. 64] filed on June 11, 2001. Having considered the pleadings of record, the relevant law, and otherwise being fully advised in the premises, the Court finds grounds for denying Defendant's motions as explained below.

## I.     BACKGROUND

Plaintiffs' First Amended Complaint, filed on June 12, 2000, seeks compensatory damages from the United States for Mr. Benjamin Sanchez's wrongful death and for the loss of support, services, and contributions to his daughter. Plaintiffs allege that on March 15,

1998, Mr. Sanchez died while he was handcuffed and detained in a holding cell at the Isleta Pueblo Police Department (Department). One of the Department's police officers had arrested Mr. Sanchez and placed him in the holding cell earlier on that date. Mr. Sanchez allegedly was intoxicated and disorderly while in custody and may have expressed suicidal thoughts to others prior to his death.

Mr. Sanchez's death appeared to be self-inflicted. He allegedly hung himself from the top bar of his cell with his belt while the arresting officer was elsewhere in the building making a phone call or completing paperwork and no other officers were monitoring the holding cell area. No autopsy was performed to determine the exact cause of death. Family members allegedly observed a bruise on Mr. Sanchez's forehead while preparing his body for burial.

Plaintiffs allege that Mr. Sanchez's death was the result of the negligence of the United States' employees and/or agents. Plaintiffs also allege that it was negligent for the arresting officer to leave Mr. Sanchez unmonitored in the holding cell with his belt on and with the knowledge that Mr. Sanchez was intoxicated and possibly suicidal. According to Plaintiffs, it was negligent for the Department and/or the Bureau of Indian Affairs (BIA) to allow Mr. Sanchez to be held in a substandard facility by officers who lacked sufficient supervision and training to appropriately handle an arrestee in Mr. Sanchez's condition.

Defendant concedes that the Department's police officers are "federal employees" for purposes of the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671 to 2680 (2000). See 25 U.S.C. § 450f, note (West Supp. 1996) (noting that tribal employees are

deemed to be employees of the BIA while acting within the scope of their employment in carrying out contracts under the Indian Self-Determination and Education Assistance Act, 25 U.S.C. §§ 450a-450n (2000)). Nevertheless, Defendant maintains that it is immune from suit under the FTCA because Plaintiffs' negligence claims are barred by the FTCA's "discretionary function" exception, 25 U.S.C. § 2680(a). Defendant also asserts that any claims for intentional torts are barred because the Department's police officers were not acting as "investigative or law enforcement officers" as defined in the FTCA, 25 U.S.C. § 2680(h).

## II. ANALYSIS

### A. Standard of Review

The applicability of one or more exceptions to the FTCA's waiver of immunity presents a jurisdictional issue because the Court lacks subject matter jurisdiction to hear claims that are barred under the FTCA. See Aragon v. United States, 146 F.3d 819, 823 (10th Cir. 1998). In this case, however, the Court applies a summary-judgment standard because Defendant has framed its motions as such, and the jurisdictional questions raised in Defendant's motions are intertwined with the merits of Plaintiffs' case. See Bell v. United States, 127 F.3d 1226, 1228 (10th Cir. 1997).

Under Fed. R. Civ. P. 56(c), the Court may enter summary judgment when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact, and that the moving party is entitled to judgment as a matter of law. A "genuine issue" exists where the evidence before the Court is of such a nature that

a reasonable jury could return a verdict in favor of the non-moving party as to that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986). A fact is "material" if it might affect the outcome of the case. See id. at 248. Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See id. at 324. It is not the Court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

## B.  Discretionary Function Exception

The FTCA sets forth certain conditions under which the United States waives its sovereign immunity and authorizes suits for damages.  See Berkovitz v. United States, 486 U.S. 531, 535 (1988).  The general rule under the FTCA is that

> the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).  Under Section 2680(a) of the FTCA, however, sovereign immunity is not waived for "[a]ny claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  The latter provision of the FTCA is commonly called the "discretionary function exception" (DFE).

The Court applies a two-part test for analyzing whether a particular act or omission falls under the DFE.  First, the court determines whether the government conduct at issue "is a matter of choice for the acting employee."  Berkovitz, 486 U.S. at 536.  If the conduct does not "involve[] an element of judgment or choice" because "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," then the DFE will not apply.  Id.

If the conduct at issue does involve an element of judgment or choice, however, the inquiry is not complete.  In that instance, the Court must proceed to the second part of the

test, under which it determines "whether that judgment is of the kind that the [DFE] was designed to shield." Id. The DFE is designed to shield "governmental actions and decisions based on considerations of public policy," because the DFE's purpose is to prevent "'judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" Id. at 536-37.

On the other hand, such deference to legislative and administrative policymaking does not require the Court to blindly accept the government's argument that all "decisions—or nondecisions—that involve choice and any hint of policy concerns are discretionary and [fall] within the exception," Duke v. Dep't of Agric., 131 F.3d 1407, 1411 (10th Cir. 1997), or to open the door to *ex post* rationalizations, after-the-fact justifications, or conjecture that does not find reasonable support in the record, see Marlys Bear Med. v. United States, 241 F.3d 1208, 1216 (9th Cir. 2001). Rather, the DFE requires the Court to carefully distinguish conduct that implicates the exercise of policy judgment of a readily identifiable social, economic, or political nature from that which involves no more than mundane, administrative, garden-variety housekeeping problems that are far-removed from any plausible policy objectives related to the government's mission. See Duke, 131 F.3d at 1411-12; Gotha v. United States, 115 F.3d 176, 181 (3d Cir. 1997); Cope v. Scott, 45 F.3d 445, 449 (D.C. Cir. 1995).

In this case, the parties have submitted excerpts from the BIA Law Enforcement Handbook, the BIA Law Enforcement Services Adult Detention Handbook, and deposition testimony, along with what appears to be a complete copy of a BIA Inspection and

Evaluation Report entitled "Isleta Detention Facility Review" dated October 21, 1996 (hereinafter "1996 BIA Report"), with a cover memo dated December 18, 1996. This evidence shows the existence of federal standards and/or policy choices relevant to the use of the Department's holding cells and genuine issues of material fact regarding the Department's alleged failure to follow those standards or execute those policy choices.

Among other things, the 1996 BIA Report contains the following statements:

> The Chief of Police needs to indicate in a directive who is responsible for monitoring prisoners while they are in custody of the facility. Even though the planned use of the facility is only for a very short period of time, (one hour) it is still necessary to have constant supervision of prisoners.
>
> Most arrestees are intoxicated and are highly vulnerable during the first eight to ten hours of initial arrest. Since this facility is intended to be used during this period of time it is necessary for prisoners to be monitored on a constant basis while being detained awaiting transport to a long-term facility.
>
> . . . .
>
> It would be best to direct a staff member on the shift to remain in the holding area with the prisoner continuously while a prisoner is in custody. It would also be necessary to ensure training on prisoner supervision and first aid to staff directed to supervise the prisoner population.

Id. at 9.

> Currently there is no screening for suicidal prisoners in place. The Chief of Police stated that he is aware of one attempted suicide that occurred at the facility.

Id. at 20.

> Although the department only wants to utilize the facility for a staging area they need to ensure that policies are in place to protect the health and welfare of prisoners being confined.

Id. at 21.

> If at all possible no one should be incarcerated in the facility, as no staff has been assigned to monitor the prisoners while in the custody of the Isleta lock-up. As soon as possible a written directive assigning responsibility for supervising prisoners should be given to staff.

Id. at 22.

The excerpts from the deposition transcript and BIA manuals submitted by Plaintiffs show the Department's awareness of the 1996 BIA Report as well as the BIA's authority for conducting the inspection and issuing the report.

In reply to this evidence, Defendant claims that it cannot be sued for its supervision of the arresting officer who placed Mr. Sanchez in the holding cell because the arresting officer properly exercised his discretion in placing Mr. Sanchez in that location, and the use of the holding cell as a temporary holding/staging area was permitted by both a written directive of the Department's Police Chief and by the 1996 BIA Report. The Court is unpersuaded by this argument because even assuming that the decision to temporarily use the holding cell was shielded by the DFE, there remain genuine issues of material fact concerning whether the DFE also applied to the arresting officer's alleged failure to monitor

Mr. Sanchez for a portion of the time he was detained in the holding cell. Contrary to the statements in the report by Defendant's expert, the plain language of the 1996 BIA Report repeatedly indicates that even though the Department only planned to use the facility to detain arrestees for an hour or less, certain standards still needed to be met, including "constant supervision of prisoners" (especially those who are intoxicated). There are genuine issues of material fact concerning whether such constant supervision occurred in Mr. Sanchez's case.

Defendant also contends that the 1996 BIA Report was rendered moot or nonbinding before Mr. Sanchez died because the proposed regulations cited therein were never made part of the Code of Federal Regulations (CFR), and because the BIA's "Adult Holding Facilities Handbook" cited by Plaintiffs' expert was never finalized and adopted by that agency. While the current CFR does refer to mandatory minimum policies, standards, and guides applicable to detention, holding, rehabilitation, and law enforcement programs in Indian Country, see 10 C.F.R. pts. 10, 12 (2001), Defendant is correct that the CFR does not contain the materials cited in the 1996 BIA Report. That fact, however, does not necessarily entitle Defendant to judgment as a matter of law based on the DFE.

The DFE contemplates that an employee's conduct may be prescribed by "a federal statute, regulation, *or policy*." Berkovitz, 486 U.S. at 536 (emphasis added); see also United States v. Gaubert, 499 U.S. 315, 324 (1991) (noting that "an agency may rely on internal guidelines rather than on published regulations"); Cohen v. United States, 151 F.3d 1338, 1344-45 (11th Cir. 1998) (reasoning that the Government would not be immune from suit

if its employee violates an agency's own mandatory internal guidelines because there is no room for choice and the action will be contrary to policy). Thus, the instructions stated in the 1996 BIA Report may continue to be valid and binding as an internal agency policy, standard, or guideline notwithstanding their absence from the CFR.

In addition, the DFE does not necessarily shield a failure to effectuate policy choices that already have been made. See Marlys Bear Med., 241 F.3d at 1215; Vickers v. United States, 228 F.3d 944, 953 (9th Cir. 2000); cf. Tonelli v. United States, 60 F.3d 492, 496 (8th Cir. 1995) ("Failure to act after notice of illegal action does not represent a choice based on plausible policy considerations."). There are genuine issues of material fact concerning whether this case involves a failure by the Department to effectuate policy choices that already had been made in the 1996 BIA Report or in the BIA manuals.

Finally, even if the decision not to constantly monitor Mr. Sanchez or remove his belt while he was detained in the holding cell involved an element of judgment or choice, Defendant has not established that the judgments or choices involved in this decision were susceptible to policy analysis. Plaintiffs' complaint and the evidence submitted by the parties may be construed as alleging the type of negligence that results from laziness, haste, inattention, distraction, or absent-mindedness. This type of negligence is not motivated by any plausible policy objectives. See Coulthurst v. United States, 214 F.3d 106, 111 (2d Cir. 2000). Accordingly, the Court concludes that judgment as a matter of law based upon the DFE is precluded at this time by at least one genuine issue of material fact concerning the

operation of the Department's holding cell and the circumstances under which Mr. Sanchez was detained in that location.

### C. Plaintiffs' Allegations of Suicide

Defendant also moves for summary judgment based on what it calls "Plaintiffs' allegations of suicide." The gist of this motion is that, based upon Plaintiffs' deposition testimony, Plaintiffs would not have filed suit if they had believed Mr. Sanchez had committed suicide. Therefore, according to Defendant, Plaintiffs must base their lawsuit on the claim that Mr. Sanchez was killed by some intentional act on the part of one or more of the Department's police officers.

The central legal issue pertaining to this motion is the FTCA's distinction between the scope of immunity for "investigative or law enforcement officers of the United States Government," 28 U.S.C. § 2680(h) and that of other "employee[s] of the Government," 28 U.S.C. § 1346(b). Under Section 2680(h), the United States cannot be sued for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights" except for claims arising out of "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" by "investigative or law enforcement officers of the United States Government." Thus, if the officers of the Isleta Pueblo Police Department are not "investigative or law enforcement officers of the United States Government," Plaintiffs in this instance are barred from bringing any claims that rely on intentional tort theories such as assault or battery.

The Court assumes for purposes of analysis that Plaintiffs are barred from bringing any intentional tort claims against the officers of the Isleta Pueblo Police Department. Notwithstanding this assumption, there are disputed factual issues as to the proximate cause of Mr. Sanchez's death. These disputed factual issues preclude summary judgment.

Viewing the evidence under the standard required by Fed. R. Civ. P. 56, see Hunt, 526 U.S. at 551-52; Bell, 127 F.3d at 1228, the deposition testimony relied upon by Defendant does not present the type of evidence that would be usable at trial for purposes of proving the proximate cause of Mr. Sanchez's death. In the deposition testimony excerpted by Defendant, Plaintiffs only state their beliefs and doubts about how Mr. Sanchez died, and these statements were elicited through leading questions which were subject to an objection by Plaintiffs' counsel that they called for a legal conclusion. Although Plaintiffs may have observed a bruise on Mr. Sanchez's forehead after his body was returned to them for burial, they did not personally observe any of the activity that took place at the police station during the time period when Mr. Sanchez died. Moreover, there is no indication that Plaintiffs have the expertise to offer a competent medical opinion about the cause of Mr. Sanchez's death or a competent legal opinion about whether his death would be defined as a "suicide" or an intentional tort under the law of the relevant jurisdiction.

For these reasons, Plaintiffs' deposition testimony concerning their beliefs or doubts about the causes of Mr. Sanchez's death would not be usable at trial to prove that the death resulted from an intentional tort or a suicide. If Plaintiffs' testimony cannot be used for this purpose, then Defendant has not provided an undisputed factual basis for concluding that the

United States is immune from suit, regardless of whether the Department's employees are treated as federal law enforcement officers under the FTCA. Therefore, the Court denies Defendant's Motion for Summary Judgment Regarding Plaintiffs' Allegations of Suicide.

## III. CONCLUSION

For the foregoing reasons, there are disputed issues of material fact concerning the applicability of the DFE and the cause of Mr. Sanchez's death, and Defendant is not entitled to judgment as a matter of law.

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment Regarding Plaintiffs' Allegations of Suicide [Doc. No. 63] be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment Based Upon Discretionary Function [Doc. No. 64] be and hereby is **DENIED**.

_____
**M. CHRISTINA ARMIJO**
United States District Judge